UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JOSEPH GARY SMITH, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>WINDSTREAM COMMUNICATIONS, )<br>INC., )<br>)<br>Defendant. )<br>) | Civil No. 11-272-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Joseph Gary Smith found himself in a disastrous situation. A downed cable that fell from a utility pole in front of Smith's residence, latched to a passing vehicle, and somehow entangled him. Smith, having realized a second too late what had occurred, was immediately drug down the street, and under a couple of vehicles, until finally his body collided with a large pole. Smith blames Windstream Communications Inc., for the unfortunate incident, and filed suit against it for negligence. After several months of discovery, the parties have filed cross-motions for summary judgment. The Court has reviewed these motions. For the reasons set forth below Smith's motion is DENIED and Windstream's motion is GRANTED in part and DENIED in part.

**I**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is

1

improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Id.* (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In

applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citing *Anderson*, 477 U.S. at 251-52).

## II

### A

In its Motion for Partial Summary Judgment [R. 90], Windstream argues that the claims for increased likelihood of future harm, bad faith, punitive damages, and a reasonable attorney's fee are not supported by the evidence. [*Id.* at 1.] Smith, in his response, has chosen not to present well-reasoned arguments on these issues, opting instead to copy verbatim out of the *Palmore Kentucky Instructions to Juries* ("Palmore"). [*See generally* R. 98.] The Court finds this strategy ineffective. Essentially, by relying on recommended jury instructions and the related commentary in Palmore, Smith presupposes that he has presented sufficient evidence on the claims contested by Windstream to have them decided by the trier of fact. The Court, however, rejects this premise because the record suggests otherwise.

#### 1

With respect to the "increased likelihood of future harm issue," Windstream contends that because Smith has failed to conduct medical testing to assess whether injuries sustained by Smith may lead to a higher risk of additional injuries in the future, this claim should not persist. [R. 90-1, at 5.] Smith, as already noted, takes the unusual step of defending his position by copying verbatim from Palmore's recommended instruction on "increased risk of future harm"

and the related commentary. Notwithstanding this attempt to stave off summary judgment, the Court cannot rule in favor of Windstream on this issue. The Court's review of Smith's Complaint leads it to conclude that Smith has not filed a separate claim for "increased likelihood of future harm." Instead, he includes it in his list of damages. [R. 1-1, at 4 ("the Plaintiff was severely injured and permanently damaged as follows . . . [i]ncreased likelihood of future harm."]

Moreover, Kentucky case law does not recognize a separate claim for "increased likelihood of future harm." Rather, Kentucky has held that the "increased likelihood of future harm" is a consideration if and when a jury decides to award damages for an injury caused by the defendant's conduct. *See Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 195 (Ky. 1994) ("A recovery for an increased risk of future harm . . . is not a new element of damages but proof that the jury should consider in compensating for future physical pain and mental suffering, for future impairment or destruction of earning power, and, if there is evidence to support it, for future medical expenses.")

Even the case cited by Windstream, *Davis v. Graviss*, 672 S.W.2d 928 (Ky. 1984), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky. 2002),[1] reinforces this approach. Windstream seems to think that the *Davis* court "recognized a cause of action for an increased likelihood of future harm," [R. 90-1, at 4] but there is no support for that proposition in the opinion. Instead, the court held that "where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications." *Davis*, 672 S.W.2d at 932. It further opined that "[w]here .

---

[1] *Sand Hill* was subsequently vacated by *Ford Motor Co. v. Estate of Smith,* 538 U.S. 1028 (2003).

. . that likelihood initiates serious mental distress, this also is compensable." *Id.* Neither of the *Davis* court's holdings directly or indirectly establishes a claim for increased likelihood of future harm.

Still, Windstream's misinterpretation does not detract from its broader point that Smith has not proffered sufficient evidence to establish that the injuries he suffered might lead to a higher risk of additional injuries in the future. Indeed, Smith has failed to present any evidence supporting his argument that he is entitled to increased damages because of an "increased likelihood of future harm." However, the Court need not resolve this issue now. Rather, it can wait until decisions are made on instructing the jury. *See Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 56 F.3d 726, 736 (6th Cir. 1995) ("A trial court may refuse to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue."); *United States v. City of Columbus, Ohio*, 209 F.2d 857, 865 (6th Cir. 1954) (where the court found the government could not prevail on the issues of damages because "[t]here was no evidence sufficient to warrant submitting the question of damages to the jury."). Thus, summary judgment is not appropriate as to this issue.

**2**

Next, the Court reviews the merits of granting summary judgment for Windstream on the purported bad faith claim. Windstream claims that Smith has included a one-million dollar bad faith claim in the initial disclosures. Windstream is puzzled by the inclusion of this claim in the initial disclosures, [R. 90-1, at 5.] and for good reason. The Complaint does not reference a bad faith claim, [*See generally* R. 1-1.] and the Federal Rules of Civil Procedure do not contemplate the filing of claims in documents other than complaints. *See generally* Fed.R.Civ.P. 8(a). Based

5

on this basic understanding of the Federal Rules, Smith's inclusion of a bad faith claim in the initial disclosures should be disregarded.

Even if the Court decided that a bad faith claim had been properly raised, this claim could not persist because bad faith issues only arise in the insurance context. [R. 90-1, at 5.] This proposition is supported by *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000). There, victims of a truck accident filed suit against an insurance carrier to recover damages for bad faith because the carrier failed to promptly settle the claims before proceeding to trial. *Id.* at 95. The issue before the Kentucky Supreme Court was "whether the Unfair Claims Settlement Practices Act (the UCSPA), KRS 304.12-230, and/or the so-called tort of 'bad faith' apply to persons or entities who are either self-insured or uninsured." *Id.* The court held that "both the statute and common law tort apply only to persons or entities engaged in the business of insurance," and noted that "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Id.* at 95, 100. Based on the *Davidson* decision, permitting Smith to proceed with his alleged bad faith claim would be in direct contravention of Kentucky law.

Smith copies verbatim the "Comment" section on bad faith included in Palmore. [R. 98, at 7.] Review of the "Comment," supports the proposition that bad faith claims are only cognizable in the insurance context. Per that commentary, the bad faith instruction recommended by Palmore is premised upon "the facts of *Farmland Mutual/Ins. Co. v. Johnson*, 36 S.W. 368 (Ky. 2000)." According to the "Comment" that case "involved a claim of bad faith premised upon violations of the Kentucky Unfair Settlement Practices Act." It also notes that the Kentucky Supreme Court has "held that the elements of the tort of 'bad faith' were the same regardless of whether the claim was brought by the insured or a third party and regardless of

whether the claim was premised on common law or a statute." What is missing in the commentary is any acknowledgement of a bad faith claim extending beyond cases involving insurance. Coupling this obvious omission from Palmore's commentary with the Kentucky Supreme Court's holding in *Davidson*, the Court finds that Smith is precluded from bringing a bad faith claim against Windstream, especially when there has been no evidence to show that Windstream is an insurance company.

**3**

Whether Smith should be prohibited from requesting punitive damages is a determination that can be handled at trial, not at the summary judgment stage. A finding of punitive damages requires the plaintiff to show that the defendant failed to use reasonable care, ultimately was negligent, and that he was either wanton or exhibited reckless disregard for others through his conduct. *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (KY. 2002) (quoting *Horton v. Union Light, Heat and Power Co.*, 690 S.W.2d 382 (Ky. 1985). This Court determined in *Embry v. Geo¸* 478 F.Supp.2d 914, 920 (E.D. Ky. 2007) that under Kentucky law courts apply the clear and convincing standard when deciding whether enough evidence exists to give the jury a punitive damages instruction.

Windstream argues that "[e]ven assuming *arguendo* that all of Plaintiff's allegations are true, Windstream's actions do not even remotely approach the standard of recklessness or intentional conduct required to assess punitive damages." [R. 90-1, at 6.] Smith, again, copies verbatim from Palmore. This time he copies the instruction on punitive damages and the related commentary, and then concludes by adding "[t]hus, punitive damages is a proper consideration for the jury." [R. 98, at 1-6.]

Again, the Court is unpersuaded by Smith's argument and addresses instead the merits of Windstream's argument. Windstream has a compelling point in the sense that Smith has failed to offer any evidence to support a finding by a jury that he should be awarded punitive damages. There has been nothing so egregious in Windstream's behavior to warrant such punishment. Notwithstanding this lack of proof, these determinations are generally made at the end of trial when the Court drafts jury instructions. *See Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008) (explaining that "[a] party needs only a slim amount of evidence to support giving a jury instruction."). Moreover, even if the Court instructed the jury on punitive damages, it is assumed that the jury would not award the plaintiff such damages if there is no evidence to support it. *See Griffin v. United States*, 502 U.S. 46, 59 (1991) (where the Supreme Court explained that courts assume that jurors can analyze the evidence and discard factually inadequate theories); *United States v. Smith*, 419 Fed.App'x 619, 620-21 (6th Cir. 2011). In consideration of these aforementioned cases, the Court need not rule or make any findings on this issue before considering the proof offered at trial. Thus, granting summary judgment is not appropriate.

**4**

With respect to Smith's request for a reasonable attorney's fee, summary judgment is proper. Windstream asserts that based on Kentucky law, Smith is not entitled to recover an attorney's fee. Review of pertinent case law leads the Court to the same conclusion.

The Sixth Circuit has held that "[t]here is no common law right to an attorney's fee. Under the 'American Rule,' the 'general practice' is not to award fees to prevailing parties 'absent explicit statutory authority.' " *McQuery v. Conway*, 614 F.3d 591, 596-97 (6th Cir. 2010) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Ress.*, 532

U.S. 598, 602 (2001)). The Court can find no statutory authority compelling the payment of a reasonable attorney's fee in this context, and Smith has not provided any. In addition to not proffering any statutory authority, Smith does not address this issue in his otherwise cursory response. "It is well understood … that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F.Supp.2d 15, 25 (D.D.C.2003), *aff'd,* 98 Fed. Appx. 8 (D.C.Cir.2004). Because plaintiffs "failed to respond to [defendants] argument or otherwise address this claim, the Court [may] deem it abandoned." *Bute v. Schuller Int'l, Inc.,* 998 F.Supp. 1473, 1477 (N.D.Ga.1998); *see also, Colon ex rel. Disen–Colon v. Colonial Intermediate Unit 20,* 443 F.Supp.2d 659, 677 (M.D.Pa.2006). Consequently, the Court considers Smith to have waived any claim he may have asserted for a reasonable attorney's fee. Summary judgment will be entered against him on this issue.

### B

Smith's motion seeks summary judgment as to Windstream's liability. [R. 91.] According to the Complaint, Smith alleges that Windstream is liable for its negligence in maintaining its "cables and the poles to which [the cables] were attached." [R. 1-1, at 3.]

### 1

To establish negligence, a plaintiff must demonstrate the existence of a duty, breach, causation, and damages. *Mullins v. Commonwealth Life Insurance Company,* 839 S.W.2d 245, 247 (Ky.1992) (citing *Illinois Central Railroad v. Vincent,* 412 S.W.2d 874, 876 (Ky.1967)).. Ordinarily, the existence of a duty is a question of law for the court, while breach and injury are questions of fact for the jury. *Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 89 (Ky.2003). The

9

causation determination can be a question of both law and fact. *Id.* Causation creates a question of law when " 'there is no dispute about the essential facts and but one conclusion may reasonably be drawn from the evidence.' " *Id.* at 92 (quoting *McCoy v. Carter,* 323 S.W.2d 210, 215 (Ky. 1959)).

Smith argues that his injuries were caused by Windstream's negligence entitling him to judgment as a matter of law. To support his argument, he relies on his affidavit and deposition testimony, the affidavit of expert Wesley White, deposition testimony from Dr. Ronald Dubin and Dr. Robert Hoskins,[2] and pictures of the purported scene of the accident taken roughly seven months after the actual incident. Windstream asserts that it has proffered evidence in the record controverting the claims made by Smith.

The parties neither raise nor dispute the issue of whether Windstream has a duty. Review of Kentucky case law establishes that it is the responsibility of a telecommunications company to maintain its wires and poles in a reasonably safe condition for those using the highway along which the line runs. *See Flummer's Adm'r v. Tri-State Telephone Co.*, 216 S.W. 133, 135-36 (1919).

On the question of breach, however, the parties draw different conclusions. Smith contends that Windstream has failed to uphold its obligation to maintain its wires and poles in a reasonably safe condition. Based on his and Wesley White's expert opinion, the two, wooden utility poles from which the downed cable detached were rotten and deteriorating, and the j-hook, used to fasten the cable to the poles, was installed improperly resulting in the cable falling to the ground. [R. 91-1, at 2-3, 4.] Windstream disagrees, arguing that Smith's "evidence fails

---

[2] For purposes of this liability analysis, Drs. Dubin and Hoskin's testimony are not germane because they were not at the scene of the incident. Their testimony is apropos to the damages portion of the trial, and, as asserted by Smith, is "intended to show that he has suffered serious injury in the accident described in the Complaint." [R. 91-1, at 19.]

10

to demonstrate that the allegedly rotten pole and/or improper installation (both of which are contested) actually caused the lines to fall." [R. 96, at 1-2.] It proffers its own experts, Kevin Womack and David Fugate, who refute the claims made by Smith and his expert. Womack and Fugate aver that they observed Josh Nelson, a lineman, climb the utility pole from which the cable fell. [R. 96-1, at 2; R. 96-2, at 2.] According to both Womack and Fugate, Nelson conducted a sound test and visually inspected the top portion of the pole where the j-hook and cable would have been located. [R. 96-1, at 2; R. 96-2, at 2.] Based on Nelson's inspection and their experience, both experts claim that the utility pole was in good condition and that the j-hook was hung properly and not in a manner that "would allow the tension from the telephone line to dislodge the J-hook holding the line." [R. 96-1, at 2; R. 96-2, at 2.]

The conclusions to be drawn from these two sets of expert opinion are clear, but very different. On the one hand, Smith seeks to portray Windstream as negligent and incompetent in the placement of the j-hook, and the maintenance of the utility pole. On the other, Windstream depicts itself as having properly installed the j-hook in one of the holes identified by its experts, Womack and Fugate, and that "there was solid wood at the top of the pole sufficient to support attachment of Windstream lines." [R. 96, at 2.]

The condition of the utility pole and the installation of the j-hook are material to determining whether Windstream breached its duty to maintain its poles. These starkly different views of the condition of the utility pole and j-hook establish a question regarding a material fact as to whether Windstream actually breached its duty, especially given that Smith has failed to refute the testimony of Windstream's experts.

Further, in *Flummer's*, Kentucky has recognized that intervening circumstances can affect a determination of whether a telecommunications company has breached its duty to

11

maintain its wires and poles in a reasonably safe condition. There, the decedent, Hobart Flummer's estate, sued Tri-State Telephone Co., for negligence. 216 S.W. 133, at 133. Flummer and the company he worked for, S.J. Condon & Co., were reconstructing a public highway in Harlan, Kentucky. *Id.* Tri-State maintained a telephone line on this highway. *Id.* While undertaking this work, another employee of Tri-State chopped down a tree that fell on a portion of the telephone wire and, due to great weight of the tree, caused one of the telephone posts to break and fall. *Id.* That pole struck Flummer on the back of the head and killed him instantly. *Id.*

While considering the appropriateness of a "peremptory instruction," the court remarked as follows:

> No law, so far as our research goes, requires such a company to maintain its wires and poles so as to successfully resist the cutting down of a tree upon them, and the fact that the poles may have, through the negligence of the company, become decayed around the bottom, so as to render them weak, will not alter the company's responsibility under facts like these in the case before us, since it is not pretended by any one that the pole would have fallen, but for the falling of the tree on the wire, for which the Telephone Company is in no wise responsible.

*Id.* at 135-36. Although the facts and the context in which the issue arises is somewhat different, the court's acknowledgment that an intervening circumstance can affect the breach determination is highly relevant to this matter.

Although Windstream has not established that an intervening event caused the felling of the cable, its postulating does beg the question: how did the cable fall? Smith tries to answer that question in his deposition, explaining that "it just fell," and that "[t]here was no rain. There was no wind. It was just as calm and pretty and muggy that day, the night before." [R. 37-2, at 64.] But there is no indication from his testimony that he actually observed the falling of the cable. Rather, as is attested by Smith in his affidavit, any reports about the downed cable came from his

brother-in-law, Mark Ellis. [R. 77, at 4.] According to Smith, Ellis informed him that "much earlier than [his] accident," around 3:00 a.m., a hospital delivery truck driver knocked on Ellis' door and asked to use his phone to call 911 because of the cable lying on the road. [*Id.*; R. 76, at 3.] By Smith's own admission, he did not become aware of the downed cable until he stepped out of his home "about fifteen (15) 'til [Six]…" and talked to Ellis. [R. 37-2, at 58.] Moreover, the record is bereft of any evidence that Ellis actually saw the cable fall or knows of the events that transpired resulting in the downed cable. He has neither sat for a deposition nor penned an affidavit. This glaring omission leaves a lot to be desired in terms of determining why the cable fell to the ground. It is all the more reason to decline to grant summary judgment as to liability.

The photographs submitted by Smith are of no consequence either. They merely show the location of the pole from which the cable fell, but provide no insight into the circumstances that led to the cable falling. The record reveals a story, in the Court's estimation, that is incomplete and full of enough holes to make granting summary judgment for Smith impossible. From what the Court has before it, Windstream has the more persuasive position. In light of this revelation, and taken with the Court's obligation to review the facts and draw all reasonable inferences in favor of the non-moving party in a motion for summary judgment, *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255), granting such a request is not appropriate.

**2**

Finally, a word on whether Windstream's response to the hazardous condition was adequate. Both the expert reports proffered by Smith note that Windstream should have responded faster "to correct the hazardous problem . . . before [Smith] was injured." [R. 78, at 4;

R. 79, at 4.] To rebut this charge, Windstream contends that it did not have proper notice of the situation to respond before Smith's incident.

The Court is unwilling to grant summary judgment on this issue because there is not enough evidence in the record to do so. To be liable for not repairing the downed cable in a timely manner, Windstream would have (1) had a duty to repair the defect; (2) had knowledge of the defect for a period of time sufficient to have exercised ordinary care to repair it; and (3) failed to have repaired the defective condition thereby causing injury to Smith. *See Kniffley v. Reid*, 152 S.W.2d 615, 616 (Ky. 1941) (citing *Jefferson Dry Goods Co. v. Dale*, 78 S.W.2d 305 (Ky. 1934)).

Smith has failed to establish that Windstream had knowledge of the defect. The evidence on the record regarding this issue indicates that Ellis and Smith's wife, Karen Smith, notified 911 of the dangerous condition. [R. R. 77, at 2.] Karen Smith also avers in her affidavit that in an "excited utterance, [] Ellis told [her] that the 911 operator had then told him that they were trying to send Windstream or somebody out there to get to work on that downed line." [R. 76, at 4.] The Court is leery, however, to rely on this portion of her affidavit given that it presents evidentiary challenges that may preclude its admission at trial. She received her information from Ellis, who received it from the 911 dispatcher. Normally, such evidence is considered hearsay, and may not be considered on summary judgment. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (citing *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir. 1994)).

However, the inclusion of the terms "excited utterance" compels further consideration. Statements characterized as excited utterances are saved from exclusion, but based on the evidence, the Court finds that the 911 dispatcher's statement to Ellis about Windstream being

14

notified does not qualify as an excited utterance. Excited utterances are "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). These types of statements are considered trustworthy because "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Fed.R.Evid. 803 advisory committee's notes (citation omitted). Such a statement is admissible under the excited utterance exception if "(1) there [is] an event startling enough to cause nervous excitement; (2) the statement [is] made before there is an opportunity to contrive or misrepresent; and (3) the statement [is] made while the person [is] under the stress of the excitement caused by the event." *Maggard v. Ford Motor Co.*, 320 F. App'x 367, 372 (6th Cir. 2009) (quoting *United States v. Beverly,* 369 F.3d 516, 539-40 (6th Cir.2004) (citing *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir.1983)).

District courts "consider these elements on 'a case-by-case basis.' " *Id.* (quoting *Haggins,* 715 F.2d at 1057). The three questions posed have bearing on " 'the ultimate question': 'Whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event.' " *Id.* (quoting *United States v. Arnold,* 486 F.3d 177, 184 (6th Cir.2007) (quoting *Haggins,* 715 F.2d at 1058)). To put it differently, the exception requires that the declarant be " 'under the sway of' a 'startling event' and that the statement be made before there is an opportunity 'to contrive or misrepresent.' " *Id.* (quoting *United States v. Winters,* 33 F.3d 720, 723 (6th Cir.1994) (quoting *Haggins,* 715 F.2d at 1057)). " 'The assumption underlying [the] exception is that a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any

15

utterance he makes will be spontaneous and trustworthy.' " *Id.* (quoting *Haggins,* 715 F.2d at 1057).

Smith fails to explore this issue outside of inclusion of the terms in the affidavits. Windstream charges that "[a]ll information attributed to Mark Ellis qualifies as hearsay, and the circumstances under which he relayed that information to the named parties do not meet the requirements of the excited utterance exception." [R. 96, at 5.]  Besides this brief remark, there is no argument or analysis presented.  Nevertheless, it does not appear from the current record that the 911 dispatcher's comment to Ellis was made under the stress of the excitement caused by the event.  Obviously, the 911 dispatcher was not at the scene of the accident.  Thus, any statement made by the dispatcher is hearsay, and will not be considered for purposes of determining whether Windstream had notice of the downed cable.  In light of this finding, and having found no other direct evidence in the record establishing that Windstream had notification of the downed cable, the Court refuses to grant summary judgment based on a duty to repair theory.  Having found no reason to grant summary judgment in Smith's favor, his motion will be denied.

## IV

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Windstream's Motion for Partial Summary Judgment [R. 90] is **GRANTED in part** and **DENIED in part**.  To the extent that Windstream seeks entry of summary judgment on the issues of Bad Faith and an Attorney's Fee, **SUMMARY JUDGMENT IS APPROPRIATE**.  To the extent that Windstream seeks entry of summary judgment on the issues of punitive

damages and damages for "likelihood of future harm," **SUMMARY JUDGMENT IS NOT APPROPRIATE**; and

    (2)    Smith's Motion for Summary Judgment of Liability [R. 91] is **DENIED**.

This 25th day of June, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge